IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ROBERT E. FOWLER,
       Petitioner,

vs.                                              Case No.:  3:11cv244/RV/EMT

KENNETH S. TUCKER,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 24, 26).  Petitioner filed a reply (doc. 32).

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 26).[1]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2006-CF-298, with one count of sexual battery (offender 18 years of age

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 26).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

of older and victim less than 12 years of age), a capital felony, and one count of lewd and lascivious molestation (offender 18 years of age of older and victim less than 12 years of age), a life felony (Ex. B at 17–18). Following a jury trial on November 30, 2006, Petitioner was convicted as charged (Ex. B at 29–31, Ex. C). On December 1, 2006, Petitioner was sentenced to life imprisonment without the possibility of parole and with pre-sentence jail credit of 281 days on Count 1 (Ex. B at 32–36, 47–51). He was also designated a sexual predator (*id.*). The court did not adjudicate guilt or impose sentence on Count 2 (*id.*).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-6543 (Ex. D). The First DCA affirmed the judgment in a written opinion filed June 30, 2008 (Ex. F). Fowler v. State, 987 So. 2d 111 (Fla. 1st DCA 2008). Petitioner sought review by the Supreme Court of Florida, Case No. SC08-1718. The court declined to accept jurisdiction in an opinion filed December 3, 2008 (Ex. I). Fowler v. State, 998 So. 2d 1145 (Fla. 2008) (Table).

On August 20, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 1–34). He subsequently filed an amended motion (*id.* at 87–110). The state circuit court summarily denied the motion (*id.* at 128–51). Petitioner appealed the decision to the First DCA, Case No. 1D11-0067, and filed an initial brief (Ex. K). The First DCA affirmed the decision per curiam without written opinion on March 22, 2011, with the mandate issuing May 23, 2011 (Exs. M, P). Fowler v. State, 60 So. 3d 1056 (Fla. 1st DCA 2011) (Table).

On August 31, 2009, while his Rule 3.850 motion was pending, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-4265, alleging ineffective assistance of appellate counsel (Ex. Q). The First DCA denied the petition on the merits on September 4, 2009 (Ex. R). Fowler v. State, 230 So. 3d 139 (Fla. 1st DCA 2009) (Mem).

Petitioner filed another habeas petition in the First DCA, Case No. 1D11-4996, on September 23, 2011 (Ex. T). The First DCA dismissed the petition on October 10, 2011, and denied Petitioner's motion for rehearing on December 6, 2011 (Exs. U, W). Fowler v. State, 74 So. 3d 1101 (Fla. 1st DCA 2011) (Mem).

Petitioner filed the instant federal habeas action on May 12, 2011 (doc. 1 at 23).  Respondent concedes the petition appears to be timely (doc. 24 at 3–4).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not

warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that

he is in custody "in violation of the Constitution or laws and treaties of the United States."  28
U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the
petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the
State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."
Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard
v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy
the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state
court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan
v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a
habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held
that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include
reference to a specific federal constitutional guarantee, as well as a statement of the facts which
entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas
corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the
contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state
courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general
appeal to a constitutional guarantee as broad as due process to present the "substance" of such a

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
judgment of a State court shall not be granted unless it appears that–
            (A)  the applicant has exhausted the remedies available in the courts of the State; or
            (B) (i)  there is an absence of available State corrective process; or
                    (ii)  circumstances exist that render such process ineffective to protect the rights of the
applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within
the meaning of this section, if he has the right under the law of the State to raise, by any available procedure,
the question presented.

claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In

Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

ground that a jury instruction violated due process because it obviated the requirement that the

prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing

Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in

which the habeas petitioner cited federal authority was by referring to a state court decision in which

"the defendant . . . asserted a broad federal due process right to jury instructions that properly explain

state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt

that a defendant's citation to a state-court decision predicated solely on state law was sufficient to

fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited

case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such

a citation was obviously insufficient when the record satisfied the federal habeas court that the

federal claim asserted in the cited case was not the same as the federal claim on which federal habeas

relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan

v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to

mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's

claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order

to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes

to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed

by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513

U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair

presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state

court if that court must read beyond a petition or a brief (or a similar document) that does not alert

it to the presence of a federal claim in order to find material, such as a lower court opinion in the

case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state
constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in
resolving the appeal.  513 U.S. at 366.

In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S.

411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. Id. The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. Id.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*

      Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

      <u>Ground One:</u> "Defense counsel was ineffective for failing to file a motion to suppress, or at least to argue and make an objection to the videotaped interview of the alleged victim with the Florida Dept. of Children and Families child welfare team being entered into evidence [sic]. The videotape was testimonial in nature, the Defendant did not have an opportunity to cross-examine the alleged victim on the tape, the judge made no record findings that the taped statements were reliable, and the alleged victim was available and did testify at trial. By defense counsel's allowing the videotape to be played at trial, the Petitioner's due process rights under the 5th and 14th Amendment[s] (U.S. Constitution), and the Defendant's 6th Amendment right (U.S. Constitution) to effective assistance of counsel and his right to confront his accuser were violated."

      Petitioner contends defense counsel was ineffective for failing to either move to suppress a videotape of the victim's interview with a nurse employed by the State's child protective agency, or object to its admission at trial (doc. 1 at 10–12). He contends counsel should have objected to admission of the videotape on two grounds: (1) the trial court failed to hold a hearing and determine the reliability of the victim's statements, as required by Florida Statutes § 90.803(23), and (2) admission of the videotape violated his right to confront his accuser (*id.*). He contends counsel's inaction violated his right to a fair trial, his right to confront his accuser, and his right to effective assistance of counsel guaranteed by the Fifth, Sixth, and Fourteenth Amendments (*id.*). Petitioner additionally appears to assert a federal due process violation based upon the trial court's admission of the videotape without complying with Florida Statutes § 90.803(23) (*id.*). He also appears to assert a Confrontation Clause claim with respect to admission of the videotape (*id.*).

      Respondent concedes Petitioner exhausted his claim of ineffective assistance of counsel, but contends Petitioner did not exhaust an independent due process claim based upon trial court error (to the extent he asserts one now), because he did not present it to the state appellate court on appeal from the lower court's denial of his Rule 3.850 motion (doc. 24 at 5–6, 11–13, 24–25). Respondent therefore contends a due process claim based upon trial court error is procedurally barred from federal review (*id.* at 13). Respondent further contends that to the extent Petitioner asserts a due process violation based upon defense counsel's conduct, his claim is governed by the Sixth

Amendment standard (*id.* at 24–25).  Respondent contends the state court's adjudication of the ineffective assistance of counsel claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 29–32).

Respondent is correct that to the extent Petitioner asserts an independent due process violation based upon defense counsel's conduct (that is, failing to seek suppression of the videotape or object to its admission at trial), his claim is governed by the Sixth Amendment standard.  If a constitutional claim is covered by a specific constitutional provision, such as the Sixth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.  *See* County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citing United State v. Lanier, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) and Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).  Thus, a substantive due process analysis is inappropriate if Petitioner's claims are covered by another constitutional amendment.  *Id.*  In the instant case, Petitioner's claims based upon defense counsel's conduct (not only in Ground One, but in all of his federal habeas claims discussed *infra*) are covered by the Sixth Amendment; therefore, his due process claims based upon defense counsel's conduct are not cognizable under the Due Process Clause.

To the extent Petitioner asserts an independent due process challenge to the trial court's admission of the victim's videotaped statement on the ground that the trial court failed to comply with the requirements of Florida Statutes § 90.803, he failed to properly exhaust the claim in the state courts.  Petitioner presented a federal due process claim as Ground 1 in his state habeas petition (Ex. T at 4–17).  The First DCA dismissed the petition, pursuant to Baker v. State, 878 So. 2d 1236 (Fla. 2004) (Ex. U).  In Baker, the Supreme Court of Florida held that habeas corpus petitions filed by noncapital defendants which seek the kind of collateral postconviction relief available through a motion filed in the sentencing court will be dismissed as unauthorized, if such petitions:  (1) would be untimely if considered as motions for postconviction relief pursuant to the rule of criminal procedure governing motions to vacate, set aside, or correct sentence; (2) raise claims that could have been raised at trial or, if properly preserved, on direct appeal of the judgment and sentence; or (3)

would be considered second or successive motions under the applicable rule of criminal procedure that either fail to allege new or different grounds for relief, or allege new or different grounds for relief that were known or should have been known at the time the first motion was filed.  878 So. 2d at 1245–46.

The First DCA's judgment clearly and expressly stated it was relying on a state procedural rule to resolve the federal claim.  Further, the First DCA's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law. Additionally, the state procedural rule was firmly established and regularly followed.  *See* Baker, 787 So. 2d at 1245–46; Fla. R. Crim. P 3.850(l).  Therefore, Petitioner procedurally defaulted his federal due process claim.[7]

As previously discussed, to overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  In this case, Petitioner has not shown cause for the procedural default,[8] nor has he proffered new reliable evidence which, if presented to the jury, would more likely than not have resulted in an acquittal.  Therefore, Petitioner is not entitled to federal review of his federal due process claim based upon the trial court's admission of the victim's videotaped statements, to the extent he asserts such a claim in his federal petition.  The court will therefore review only the remaining aspects of

---

[7] The record demonstrates that Petitioner did not raise a federal due process claim regarding the admission of the videotape on direct appeal (*see* Ex. D).  Additionally, Petitioner did not fairly present a federal due process claim in his Rule 3.850 motion.  In his motion and his brief on appeal of the denial of the motion, he argued only that the trial court violated Florida law, specifically, Florida Statutes § 90.803(23), by admitting the evidence without conducting a proper hearing and making specific findings concerning reliability, as required by the Florida statute (Ex. J at 90–92, Ex. K at 7–10).  Petitioner did not cite in conjunction with the claim a federal source of law or a case deciding his claim on federal grounds, nor did he even label his claim "federal" (*id.*).  Therefore, he did not fairly present a federal due process claim with regard to the trial court's admission of the videotaped statements.

[8] In Petitioner's first state habeas petition, he claimed appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred by admitting the victim's videotaped statements without conducting the inquiry required by Florida Statutes § 90.803(23) (Ex. Q at 5–13).  Petitioner did not argue that appellate counsel was ineffective for failing to present a federal due process claim with respect to the trial court's admission of the victim's videotaped statements and, therefore, did not exhaust such a claim of ineffective assistance of appellate counsel (*id.*).  This failure to exhaust precludes a federal court from considering it as part of a cause argument excusing a procedural default.  *See* Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

Ground One (i.e., ineffective assistance of counsel based upon counsel's failure to seek suppression of the victim's videotaped statements or object to their admission at trial, and a Confrontation Clause violation based upon the trial court's admission of the victim's videotaped statements).

        1.      Clearly Established Federal Law

           a.      <u>Ineffective assistance of counsel</u>

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at 690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no

'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness,

while the performance and prejudice components are mixed questions of law and fact.  Strickland,

466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

    b.  Confrontation Clause

   The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const.

amend. VI.  The principal protection derived from the confrontation right is the right to effective

cross-examination of the State's witnesses.  *See* Crawford v. Washington, 541 U.S. 36, 61, 124 S.

Ct. 1354, 158 L. Ed. 2d 177 (2004); United States v. Owens, 484 U.S. 554, 559, 108 S. Ct. 838, 98

L. Ed. 2d 951 (1988).  In Crawford, the Supreme Court held that the Sixth Amendment bars the

admission of out-of-court statements of declarants who do not testify at trial.  541 U.S. at 53–54

("[T]he Framers would not have allowed admission of testimonial statements of a witness who did

not appear at trial.").

    2.  Federal Review of State Court Decision

   Petitioner raised his claim of ineffective assistance of counsel and his Confrontation Clause

claim in Ground 1 of his amended Rule 3.850 motion (Ex. J at 90–92).  In the state circuit court's

written decision denying the motion, the court correctly identified the deficient performance and

prejudice prongs of the Strickland standard as the legal standard applicable to Petitioner's ineffective

assistance of counsel claim (*id.* at 129–30).  The court also correctly cited Crawford as the legal

standard governing Petitioner's Confrontation Clause claim (*id.* at 131).  The court adjudicated the

claims as follows:

> Defendant claims that his counsel was ineffective in failing to file a motion
> to suppress, or at least make an objection, regarding the admission into evidence of
> the videotaped interview of the child victim.  Defendant alleges that if counsel had
> made said motion or objection the Court would have had to conduct a separate
> hearing prior to the admission of the evidence to determine the reliability of the child
> victim's statement, pursuant to Section 90.803(23), Florida Statutes.  Defendant also
> alleges that he was deprived the right to confront his accuser because neither
> Defendant nor his counsel had an opportunity to question the child victim during the
> videotaped interview.  Defendant opines that "clearly the outcome of the trial would
> have been different had this key evidence been properly suppressed."

>  Section 90.803(23)(a), Florida Statutes, provides, in pertinent part:

Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:

1.    The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability.  In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and

2.    The child either a. Testifies; or
b.    Is unavailable as a witness . . .

Defendant fails to allege how a motion to suppress or an objection to the interview tape would have been successful at trial.  Defendant places a large amount of emphasis on the fact that the Court did not perform a separate hearing prior to the admission of evidence, pursuant to Section 90.803(23), Florida Statutes.  The Court did, in fact, convene a hearing on November 28, 2006, prior to trial and outside the presence of the jury, in which the Court reviewed the child victim's taped statement and considered whether the statement should be redacted for trial.[FN 6:  reference to excerpt of transcript November 28, 2006 hearing]  Although the court did not make an affirmative finding that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability," the Court did consider the child's age at the time of the statement, the nature and duration of the abuse alleged, and the relationship of the child victim to Defendant when determining whether the taped interview could be entered as evidence.[FN 7:  reference to excerpt of transcript of November 28, 2006 hearing]  At this hearing, both the prosecution and defense counsel represented to the Court that the child victim's taped statement would be admissible because she was testifying at trial; the reliability of the taped statement was not questioned.[FN 8:  reference to excerpt of transcript of November 28, 2006 hearing]  During Defendant's trial, the Court questioned the child victim extensively to determine whether she was competent to testify at trial.[FN 9: reference to excerpt from trial transcript]  When taking all of this information into

consideration, it is clear that the taped interview would have been admitted as being reliable if a formal Section 90.803(23) had been conducted.  Consequently, the Court finds that Defendant has failed to demonstrate that he was prejudiced by his counsel's failure to file a motion to suppress, or at least to object to the introduction of the child victim's taped statement at trial, as such a motion or objection would not have affected the admissibility of the child victim's taped interview.  Defendant is not entitled to relief as to this claim.

Defendant is also incorrect that he was deprived the right to confront his accuser because neither Defendant nor his counsel had an opportunity to question the child during the videotaped interview.  Because the child victim testified at Defendant's trial, Defendant's right to confrontation was not violated by admission of the child's videotaped statement.  See State v. Contreras, 979 So. 2d 896, 901–03 (Fla. 2008) (applying Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 138 L. Ed. 2d 177 (2004), to child victim taped statement).  Defendant is not entitled to relief on the basis of this claim.

(Ex. J at 131–33).

Petitioner presented his ineffective assistance of counsel and Confrontation Clause claims on appeal to the First DCA (Ex. K at 6–11).  The appellate court affirmed the lower court's decision without written opinion (Ex. M).

With regard to Petitioner's Confrontation Clause claim, as discussed *supra*, in Crawford, the Supreme Court held that testimonial evidence from an absent witness may be admitted only when the witness is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. at 68 (emphasis added).  In Petitioner's case, the record demonstrates that the victim testified at trial to the same statements in her videotape (*see* Ex. C at 39–48, 105–19).  Defense counsel had ample opportunity to confront and cross-examine her.  Therefore, the state court's denial of Petitioner's claim was not contrary to or an unreasonable application of Crawford.  *See* United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006) (no Confrontation Clause violation with respect to admission of Witness Cromer's testimony regarding statement made by Witness Mojica; Mojica testified at trial and testified to same statement Cromer described, and defendant had ample opportunity to confront and cross-examine Mojica).

Petitioner likewise failed to show he is entitled to relief on his ineffective assistance of counsel claim.  When the state courts have already answered the question of how an issue would

have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, federal habeas courts should not "second guess" them on such matters because it is a fundamental principle that state courts are the final arbiters of state law.  Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005).  Here, the state court determined that the child victim's videotaped interview would have been admitted under Florida Statutes § 90.803(23), regardless of whether defense counsel filed a motion to suppress it, or objected to its admission at trial.  Because this federal court will not "second guess" the Florida state court's conclusion that the evidence would have been admitted under Florida law regardless of any effort by counsel to keep it out, Petitioner cannot demonstrate that his counsel was deficient.  *See* Freeman v. Attorney Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) (a lawyer cannot be deficient for failing to raise a meritless claim.).  Therefore, Petitioner failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of Strickland.  Accordingly, he is not entitled to habeas relief on Ground One.

> B.     Ground Two:  "Defense counsel was ineffective for failing to secure an independent psychological analysis of the alleged victim, and make a motion for funds to secure such evaluation.  Defense counsel's failure violated the Petitioner's due process rights under the 5th and 14th Amendment (U.S. Constitution), and the Defendant's 6th Amendment right (U.S. Constitution) to effective counsel."

Petitioner contends defense counsel was ineffective for failing to obtain an independent psychological examination of the child victim or request funds to pay for such an evaluation (doc. 1 at 13–14).  He asserts he advised counsel that prior to the victim's allegations of sexual abuse, he and the victim's mother had taken the victim to a mental health professional due to her hyperactivity and uncontrollable, disruptive behavior (*id.* at 13).  He states this information provided counsel with grounds to seek a mental health evaluation of the victim (*id.*).  He asserts a mental health evaluation "would have confirmed that the alleged witness was unable to testify truthfully and competently" and could have led to dismissal of the charges (*id.*).

Respondent concedes Petitioner exhausted this ineffective assistance of counsel claim in state court by raising it in his Rule 3.850 motion (doc. 24 at 13, 32).  Respondent contends Petitioner

failed to establish that the state courts' adjudication of this claim involved an unreasonable determination of the facts or was contrary to or an unreasonable application of Strickland (*id.* at 32–36).

      1.      Clearly Established Federal Law

    The Strickland standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

    Petitioner raised this claim as Ground 2 in his amended Rule 3.850 motion (Ex. J at 93–94). The state court adjudicated the claim as follows:

> Defendant next alleges that his counsel was ineffective in failing to secure an independent psychological evaluation of the child victim, and to request funding for said evaluation. Defendant contends that his counsel had knowledge that the child had been evaluated by a mental health professional for hyperactivity and disruptive behavior, and this knowledge should have prompted counsel to challenge the mental competency of the child victim. Defendant asserts that if the child victim had been evaluated it would have "likely" confirmed that she was unable to testify truthfully and competently to the facts of the case. Defendant alleges that a challenge to the child victim's mental competency would have been "extremely beneficial" to Defendant's defense and "could have led to the dropping of the charges had the victim's testimony been disqualified."

> Defendant is mistaken. A person who is found to have diminished mental capacity is not automatically deemed incompetent to testify. The judge must determine whether the person has sufficient intelligence to: 1) perceive the facts and relate them correctly; and 2) to understand the nature and obligation of an oath or have the moral sense of the obligation to be truthful. See Simons v. State, 683 So. 2d 1101, 104 (Fla. 1st DCA 1996); and Diamond R. Fertilizer v. Davis, 567 So. 2d 451, 454 (Fla. 1st DCA 1990) ("There is no authority to deny an incompetent individual the right to testify so long as he is capable of being understood and capable of testifying truthfully"). Whether a child is competent to testify is based on intelligence, not age, and whether the child possesses a sense of obligation to tell the truth. See Floyd v. State, 18 So. 3d 432, 443 (Fla. 2009) (citation omitted).

> In the instant case, the Court conducted an extensive inquiry of the child victim, testing her intelligence and her sense of obligation to tell the truth, and determined she was competent to testify.[FN 10: reference to excerpt from trial transcript] Even if an independent psychiatric examination of the victim had been permitted, such an evaluation would have had no bearing in determining whether the child was competent to testify. Accordingly, Defendant has failed to demonstrate

> that he was prejudiced by his counsel's failure to procure an independent psychiatric
> evaluation of the child victim or to request funding for said psychiatric evaluation.
> Defendant is not entitled to relief as to this claim.

(Ex. J at 133–34). Petitioner argued this issue on appeal of the circuit court's decision (Ex. K at 12–15), but the First DCA affirmed (Ex. M).

Initially, Petitioner's assertion that a mental health examiner would have determined, based upon the victim's hyperactivity and disruptive behavior, that the victim was unable to testify truthfully and competently is purely speculative. Additionally, the state court determined that, as a matter of Florida law, even if an examiner had made such a determination, the victim would have testified at trial, because the trial court independently determined she was competent to testify (*see* Ex. C at 34–38). This federal court must defer to the state court's determination that the victim would have been deemed competent to testify even if the victim had undergone an independent psychiatric examination. In light of this determination, Petitioner failed to show he was prejudiced by counsel's failure to request a mental health evaluation or funding for such. Therefore, the state court's adjudication of this claim was not unreasonable under <u>Strickland</u>.

    C.   <u>Ground Three:  "The State did not meet its burden of making a prima facie case by having the alleged victim identify the Petitioner in court as one-and-the-same person as the alleged perpetrator.  The lack of in-court identification when coupled with the vague identification of the perpetrator as only 'Earl,' violated the Petitioner's fair trial rights, and due process rights, under the 5th and 14th Amendments (U.S. Constitution)."</u>

Petitioner asserts the victim identified her attacker as "Earl" at trial, but never identified Petitioner as her attacker (doc. 1 at 14–15). Petitioner contends although defense counsel made a motion for judgment of acquittal at the close of the State's case, counsel was "slow" to make the motion and then failed to sufficiently argue the State failed to establish a prima facie case of identity, because the victim did not identify him, either in court or out-of-court, as the perpetrator (*id.*). He contends if counsel had sufficiently argued the motion, the outcome of his trial would have been different (*id.*). He additionally contends the State's failure to establish a prima facie case on the issue of identity violated his rights to a fair trial and due process guaranteed by the federal Constitution (*id.*). Petitioner states he raised his due process claim on direct appeal, and his ineffective assistance of counsel claim in his amended Rule 3.850 motion (*id.* at 15).

Case 3:11-cv-00244-RV-EMT   Document 34   Filed 09/28/12   Page 23 of 50

Respondent contends although Petitioner raised a sufficiency of the evidence claim on direct appeal, he did not fairly present the federal nature of his claim (doc. 24 at 6–11, 17–18). Therefore, his federal due process claim is unexhausted and procedurally defaulted (*id.* at 13). Respondent does not address Petitioner's ineffective assistance of counsel claim based upon counsel's failure to argue, in his motion for judgment of acquittal, that the victim's in-court or out-of-court identification of him as the perpetrator was required to send the case to the jury.

    1.  Due Process Claim

   The state court record does not support Petitioner's argument that he fairly present a federal due process claim to the state court on direct appeal. In the opening paragraph of Petitioner's argument in his initial brief, he stated, "Because the conviction is not supported by substantial, competent evidence that Appellant committed the offense, the lower court should have granted the motion for judgement [sic] of acquittal. *See* Article 1, Section 9 of the Florida Constitution; and Amds. V & XIV of the United States Constitution." (Ex. D at 11). In the body of his brief, Petitioner argued it was "well-settled" that the State must prove that the defendant committed the crime, but he did not cite a source of law for his argument (*id.* at 14). Petitioner argued that defense counsel preserved the issue for appeal by arguing that the State failed to make a prima facie case for conviction by failing to establish identity (*id.* at 15). He argued the State's failure to prove each element of the offense constituted fundamental error under Florida law (*id.* at 15–16).

   It is doubtful that Petitioner's single passing reference to the United States Constitution in an opening paragraph of his argument, and his general argument that the State must prove the defendant committed the crime, was sufficient to alert the state court that he was asserting a federal due process violation with respect to the trial court's denial of the motion for judgment of acquittal. *See, e.g.*, <u>Ramos v. Sec'y, Dep't of Corr.</u>, 441 F. App'x 689 (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder, and nowhere did he argue federal standards or include references to federal case law); <u>Pearson v. Sec'y, Dep't of Corr.</u>, 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence

claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see* Mulinix v. Sec'y for Dep't of Corr., 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[9]

Petitioner is now procedurally barred from presenting his federal constitutional claim to the state courts.  *See* Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir. 1990) (recognizing that in Florida, a motion for postconviction relief cannot be utilized for a second appeal to consider issues that could have been raised on direct appeal) (citing Florida cases); Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir. 1983) (recognizing that in Florida, claims which could have been or should have been preserved at trial and raised on direct appeal, but were not, are procedurally barred); Fla. R. Crim. P. 3.850(c) (Rule 3.850 does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal).  Petitioner has made none of the requisite showings to excuse his default.  Thus, this federal court should not review the claim.

---

[9] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36–2.

Assuming arguendo that Petitioner's passing reference to the Fifth and Fourteenth Amendments was sufficient to alert the First DCA to the presence of a federal claim, he failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law.

a.      Clearly established federal law

As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  In determining whether Petitioner's conviction was obtained with constitutionally infirm evidence, reference must be made to the substantive elements of the offense as defined by state law.  Jackson v. Virginia, 443 U.S. 307, 324 & n.16, 99 S. Ct. 2781, 2792 n.16, 61 L. Ed. 2d 560 (1979).  To satisfy the constitutional requirement of due process during trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant.  In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970).  When reviewing a claim of insufficient evidence, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt, but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319 (citation omitted).  The court should not reweigh the evidence but should view it in the light most favorable to the jury's verdict.  Id.  Because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant.  Id. at 326.  "It is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least preponderate in favor of the state, that we become concerned with conflicting inferences."  Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir. 1982) (footnote omitted).  The test under Jackson is a limited one, and it does not require that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt.  Id.; Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).  "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief."  Wilcox, 813 F.2d at 1143.

b.    Federal review of state court decision

The First DCA determined that the circumstantial evidence concerning the identity of the perpetrator was sufficient to support Petitioner's conviction (Ex. F at 2).  The court adjudicated the claim as follows:

> At appellant's trial, G.J., who was 6 years old, testified she was watching television in her mother's bedroom when a man named "Earl" entered the room and locked the door.  She testified that he then "put his private part in my mouth."  Earl referred to his private part as a "doughnut."  G.J. did not tell her mother about the incident immediately because she was scared. The record demonstrates G.J. was about 4 years old at the time of the alleged crime.

> G.J.'s mother, Janifer Barnes, lived with appellant, who goes by "Earl," from 2003 to 2004.  Barnes, testifying for the State, pointed to appellant when asked to identify Robert Earl Fowler.  Barnes said that she had observed appellant discipline G.J. and felt that his methods were inappropriate, but she had not suspected sexual abuse.  Barnes had also noticed that G.J. often flinched when appellant entered the room. After noticing black and blue marks on G.J.'s bottom, Barnes took G.J., moved out, and subsequently married Mr. Frederick "Freddy" Barnes, whom G.J. calls "Daddy."  The two were still married at the time of trial.

> Both Barnes and her husband testified that G.J. entered the Barnes' bedroom one morning and, upon seeing the married couple in bed and under the covers (though not engaged in sexual activity), said, "I know what y'all are doing."  When they asked her what she thought they were doing, G.J. responded, "I think you're sucking his doughnut."  Neither Barnes nor her husband had referred to genitalia as a "doughnut."  G.J. told her mother she called it a doughnut because "that's what Earl called it."  At an interview with the Child Protection Team, the video of which was presented as evidence to the jury, G.J. again identified "Earl" as the man who entered her room.  G.J. continued to identify Earl as the perpetrator at trial, stating that Earl "was mean" and "put his private part in my mouth."

> Although appellant goes by his middle name, Earl, G.J. was unable to point him out in court.  Counsel for the State asked the girl to "[s]tand up and look around and tell me if you see Earl."  After looking around, G.J. answered, "No."  The court later observed that G.J.'s view of appellant "was not impeded and she looked in [appellant's] direction."

> G.J. had behavioral problems which, in Barnes' opinion, worsened during the time she and G.J. lived with appellant.  Barnes testified that no men besides appellant had access to G.J. when she was not around.  On rebuttal for the State, Ms. Turman,

Barnes' cousin, also testified that prior to living with appellant, G.J. was a happy child who, by the end of her mother' relationship, flinched or cried when appellant came near her.  Turman further testified that G.J. would put her hands up to protect her head when appellant was close to her.

Appellant argues on appeal that G.J. could not identify appellant as "Earl" and that, if G.J. implicated anyone, it was Frederick Barnes.  In support, appellant points to evidence presented by the State, the videotaped interview between G.J. and a member of the Child Protection Team, which was played for the jury.  The transcript reads:

> PROTECTION TEAM:  About Earl. Tell me about Earl. Who is Earl?
>
> [G.J.]:  My momma's husband.
>
> PROTECTION TEAM:  . . . Your momma's husband now or your momma's husband before?
>
> [G.J.]:  (inaudible).
> . . . .
> PROTECTION TEAM:  When did you tell [your mother]?
>
> [G.J.]:  In the morning.  In the morning when we woke up, and I saw Earl in bed . . . .

Elsewhere on the videotape, however, G.J. clearly distinguished "Earl" from Frederick Barnes by stating, when asked if Earl still lived with her, that her mother did not like him anymore.  Also, at trial, G.J. could not remember whether she had ever lived in the same house with Earl, yet she stated she was currently living with Frederick Barnes.  Upon examination at trial, the prosecutor asked G.J., "Did Freddy Barnes ever do anything bad to you like Earl did?" and "Did anyone else ever do anything bad to you like Earl did?"  G.J. replied, "No, sir," to both questions.

The jury returned a guilty verdict on both counts, and appellant was sentenced to life imprisonment with no eligibility for parole.

The trial court's denial of a motion for judgment of acquittal is reviewed de novo.  Baugh v. State, 961 So. 2d 198, 204 (Fla. 2007); Jones v. State, 790 So. 2d 1194, 1196 (Fla. 1st DCA 2001).  The test upon review is not whether the evidence proves guilt beyond a reasonable doubt; instead, the appellate court considers only whether the jury could reasonably determine guilt given the evidence presented.

State v. Powell, 636 So. 2d 138, 142 (Fla. 1st DCA 1994), review dismissed, 645 So. 2d 454 (Fla. 1994).

> As to the evidence presented, this court has explained that:
>
> When a defendant moves for a judgment of acquittal, he "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence."

Criner v. State, 943 So. 2d 224, 225 (Fla. 1st DCA 2006) (quoting Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)).  Thus, a "judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party."  Id.

Appellant was adjudicated guilty of violating sections 794.011(2)(a) and 800.04(5)(b), Florida Statutes. To prove a violation of either law, the State must show that the proscribed conduct occurred and that the appellant was the perpetrator. §§ 794.011(2)(a), 800.04(5)(b), Fla. Stat.

Appellant's motion for judgment of acquittal was based on the belief that the State failed to satisfy the second requirement, identification of the defendant. Appellant draws attention to the fact that G.J. was given the opportunity at court to identify the perpetrator, but could not point him out.

There is no binding authority addressing a situation in which a primary child witness is willing and able to testify against the defendant, all-the-while referring to him by name, yet is still unable to point him out in court when asked.  Cases invariably involve the admissibility of out-of-court identifications in several contexts. See, e.g., Dep't of Health & Rehabilitative Servs. v. M.B., 701 So. 2d 1155, 1156 (Fla. 1997) (involving an in-court recantation of allegations); State v. Freber, 366 So. 2d 426, 428 (Fla. 1978) (addressing an inability to recognize an unfamiliar defendant); State v. Contreras, 979 So.2d 896 (Fla. 2008) (discussing an inability to testify altogether).

However, case law does establish that a witness's ability to point the defendant out in court is not a necessary component of the case.  See, e.g., Freber, 366 So. 2d at 428; C.C., Jr. v. State, 943 So. 2d 905, 905 (Fla. 5th DCA 2006).  The identity of the perpetrator can therefore be inferred from circumstantial evidence, and the lack of direct, in-court identification, goes to the strength of the case.  See C.C., 943 So. 2d at 905–06 ("[T]he trier of fact chose to believe the victim [despite the lack

of in-court identification] . . . and we cannot substitute our judgment for the fact-finder's on issues of witness credibility.").

The supreme court in Freber noted that requiring witnesses to physically point the defendant out in court would "encourage defendants to change their appearance before trial to avoid being identified in court.[FN: There is no evidence in the record establishing to what extent the defendant's appearance had changed prior to trial.] Without this proof that the person previously identified by the witness was the defendant, conviction would in some instances be impossible." 366 So. 2d at 428. Moreover, in the context of child molestation cases, the court has noted the problem of the "child sexual abuse accommodation syndrome," under which the child recants his or her allegations in an attempt to restore peace in the family. See M.B., 701 So. 2d at 1156.

Other jurisdictions have similarly recognized that the identity of a defendant can be established by inference and circumstantial evidence. The Eleventh Circuit, for instance, affirmed the conviction of two defendants who had the same names and fingerprints of the suspected criminals, but who were apparently not pointed out at trial. United States v. Chambliss, 267 Fed. Appx. 870 (11th Cir. 2008). There, the court found that "the jury could reasonably infer that the suspect 'Michael Chambliss' was the same Chambliss who was in court," based on the circumstantial evidence presented at trial. Id. at 872.

The Fifth Circuit, while stating that "a witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime," reversed such a conviction where an unseen perpetrator used the defendant's name in letters and over the phone to commit fraud. United States v. Darrell, 629 F.2d 1089, 1091 (5th Cir. 1980). In Darrell, there was no corroborating evidence to connect the defendant to the individual using the defendant's name—nothing aside from the use of the name. Id. Thus, the court found the inference of defendant's guilt to be impermissible. Id. The court has also noted, however, that where there is at least some circumstantial evidence, the conviction should be upheld. See United States v. Ferguson, 211 F.3d 878, 884 (5th Cir. 2000) (finding that uncertain in-court identification combined with out-of-court identification and possession of same type of firearm was enough to permit the inference of guilt).

Finally, a Texas intermediate court recently elaborated on the relative importance of an in-court identification:

> When a defendant contests the identity element of the offense, we are mindful that identity may be proven by direct evidence, circumstantial

evidence, or even inferences.   Although a direct in-court identification is the preferred procedure, where the circumstances do not indicate the likelihood of confusion, that type of identification is not required.  If there is no in-court identification of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused . . . [T]he absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony.

Wiggins v. State, 255 S.W. 3d 766, 771 (Tex. Crim. App. 2008) (citations omitted).

Viewing the evidence in the light most favorable to the State, there was enough evidence for the jury to find that appellant was the "Earl" who committed sexual battery and lewd and lascivious molestation on G.J.

Although G.J. was unable to point to appellant in court, G.J. continually, both in court and out of court, referred to the man who put his "doughnut" in her mouth as "Earl," the name by which appellant is known.  Her mother and stepfather testified that they never referred to genitalia as a "doughnut," and Earl was the source of the term.  G.J.'s interview with the CPT contained the same allegations against Earl.  G.J. also described the encounter with "Earl" at trial.  Appellant, named Earl, was living with G.J. and had sole access to her for a period of time, according to G.J.'s mother.  No other "Earl" would have had this access.  Accepting this evidence as required for purposes of review, it is certainly reasonable to determine that appellant, whose middle name is Earl and who routinely went by the name "Earl," was the man described by G.J. as engaging in the proscribed conduct.

For the foregoing reasons, we AFFIRM.

Fowler v. State, 987 So. 2d 111, 112–16 (2008).

The trial transcript confirms the First DCA's findings as to the circumstantial evidence that Petitioner was the person who committed the sexual abuse described by the victim. (*see* Ex. C). Additionally, this court must defer to the First DCA's determination that under Florida law, the identity of the perpetrator may be inferred from circumstantial evidence, and the lack of direct, in-court identification, goes to the strength of the case.  In light of the evidence and the Florida legal standards applicable thereto, the First DCA's conclusion that, viewing the evidence in the light most favorable to the State, there was enough evidence for the jury to find that Petitioner was the "Earl" who committed sexual battery and lewd and lascivious molestation on the victim, was not contrary

to or an unreasonable application of <u>Jackson</u>'s holding, that a conviction must be affirmed if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319. It is possible that fairminded jurists could disagree that the First DCA's adjudication of Petitioner's claim conflicts with <u>Jackson</u>, but that possibility only demonstrates that Petitioner is not entitled to federal habeas relief on his due process claim. *See* <u>Morton v. Sec'y, Dep't of Corr.</u>, 684 F.3d 1157, 2012 WL 2332758, at *6 (11th Cir. June 20, 2012) ("[W]e may issue a writ of habeas corpus only 'where there is <u>no</u> possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'") (quoting <u>Harrington</u>, 131 S. Ct. at 786) (emphasis added).

2.     Ineffective Assistance of Counsel Claim

Petitioner is likewise not entitled to relief on his related ineffective assistance of counsel claim. He contends although defense counsel made a motion for judgment of acquittal at the close of the State's case, counsel was "slow" to make the motion and then failed to sufficiently argue that the State failed to establish a prima facie case of identity, because the victim did not identify him, either in court or out-of-court, as the perpetrator (doc. 1 at 14–15). He contends if counsel had sufficiently argued the motion, the outcome of his trial would have been different (*id.*).

a.     Clearly established federal law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

b.     Federal review of state court decision

Petitioner raised this claim in his amended Rule 3.850 motion (Ex. J at 104–05). The state court adjudicated the claim as follows:

> Defendant next alleges that his counsel was ineffective in failing to sufficiently argue that the State had not satisfied its burden of making a prima facie case. Defendant argues that his counsel was "even slow" to make a motion for judgment of acquittal as he did not do so until the close of the State's case. Defendant contends that if his counsel had "aggressively" argued the need for identification of a defendant as a perpetrator by a victim as a requirement of proving guilt, the outcome of Defendant's trial would have been different. Defendant is mistaken.
>
> According to Rule 3.380, Florida Rules of Criminal Procedure, a motion for judgment of acquittal should be made at the close of the evidence for the State, or at

Case 3:11-cv-00244-RV-EMT   Document 34   Filed 09/28/12   Page 32 of 50

the close of the evidence in the case. Contrary to Defendant's allegations, counsel was not "slow" to make the [motion for] judgment of acquittal when he made the request after the close of the State's case.

Defendant is also incorrect that if his counsel had argued more aggressively that his motion would have been granted. Counsel argued the question of Defendant's identity as the perpetrator as the basis of the motion for judgment of acquittal.[FN 31: reference to excerpt from trial transcript] The sufficiency of the evidence identifying Defendant as the perpetrator of the crimes charged in this case was fully addressed on direct appeal. See Fowler v. State, 987 So. 2d 111 (Fla. 1st DCA 2008). The First District Court of Appeal has already determined that, "[v]iewing the evidence in the light most favorable to the State, there was enough evidence for the jury to find that appellant was the 'Earl' who committed sexual battery and lewd and lascivious molestation on G.J." Id., at 115. It is well-settled that a "judgment of acquittal should *only* be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party." Id., at 114 (citations omitted; emphasis added). Consequently, a judgment of acquittal is based upon the evidence and not the aggressiveness of counsel's arguments. Counsel cannot be considered ineffective for failing to secure a judgment of acquittal when the appellate court has already determined that the evidence in this case was such that a judgment of acquittal should not have been granted. Defendant is not entitled to relief as to this claim.

(Ex. J at 148–49). Petitioner argued this issue on appeal (Ex. K at 15–19). The First DCA affirmed without written opinion (Ex. M).

This court must defer to the state court's determination that the timing of defense counsel's motion was proper under Florida law. Additionally, the First DCA's determination on direct appeal that the trial evidence was sufficient to survive a motion for judgment of acquittal on the identity issue defeats Petitioner's contention that he was prejudiced by counsel's failure to argue the motion in a different manner. Petitioner thus failed to demonstrate the state court unreasonably applied Strickland in denying this claim.

D. Ground Four: "Defense counsel was ineffective for failing to present evidence supporting two other key suspects at trial for the jury's consideration. Defense counsel was ineffective for failing to perform his own investigation, or to depose, subpoena or to present key evidence of alternate suspects at trial. There was much evidence supporting Petitioner's claim that these charges were an act of revenge against Fowler by the [victim's] mother, or the acts of a man living at the alleged victim's grandmother's house at the time of the alleged crime. Defense counsel's failure violated the Petitioner's due process rights under the 14th

Amendment (U.S. Constitution), and the Defendant's 6th Amendment right (U.S. Constitution) to present a defense and to effective counsel."

Ground Five: "Defense counsel was ineffective for failing to perform his own investigation, or to depose, subpoena [sic] or to present witnesses in support of Fowler's defense at trial for the jury's consideration. The witnesses supported the Petitioner's claim that these charges were an act of revenge against Fowler by the alleged victim child's mother. Defense counsel's failure violated the Petitioner's due process rights under the 5th and 14th Amendment [sic] (U.S. Constitution), and the Defendant's 6th Amendment right (U.S. Constitution) to effective counsel."[10]

Petitioner contends defense counsel was ineffective for failing to investigate the defense theory that the sexual abuse allegations were planted in the victim's mind by the victim's mother, Janifer Carter Barnes, as an act of revenge against Petitioner for catching her in an "adulterous" relationship with Freddy Barnes (Petitioner states he and Janifer were living together at the time she met Freddy Barnes) (doc. 1 at 18–20). Petitioner identifies three witnesses who could have testified in support of this theory: (1) Mickey Hughes, Petitioner's employer, who allegedly would have testified that (a) he heard Petitioner tell Janifer that if she did not change her mailing address, he would burn all her mail, including child support checks, and (b) a "heated exchange" took place outside Petitioner's workplace after Janifer Carter arrived to pick up her mail and informed Petitioner that Freddy Barnes was outside waiting for her; (2) Rita Jordan, a friend of Janifer's, who allegedly would have testified that Janifer told her she had been molested by her father when she was younger, and Janifer had a history of making false allegations of child abuse against her father to exact revenge on him; and (3) Janet Holley, a friend of Janifer's who also allegedly would have testified Janifer had a history of making false allegations of child abuse against her father to exact revenge on him (*id.*). Petitioner additionally contends defense counsel also should have pursued the theory that the sexual abuse was perpetrated by Freddy Barnes or a male friend of Janifer Barnes's mother (the victim's grandmother), with whom Janifer and the victim lived after they moved out of the residence they shared with Petitioner (*id.* at 16–18).

Respondent contends the state court denied the claims as legally insufficient; therefore, the claims were not fairly presented or properly exhausted (doc. 24 at 12–13, 36, 38–39). Without

---

[10] The court has consolidated Grounds Four and Five for organizational purposes.

waiving the exhaustion defense, Respondent contends Petitioner failed to establish that the state courts' adjudication of his claim involved an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland (*id.* at 36–41).

Upon review of the record, the undersigned concludes Petitioner fairly presented both of these claims in his Rule 3.850 motion, as Grounds 3 and 4 (Ex. J at 94–10), and on appeal of the state circuit court's denial of the claim (Ex. K at 23–30).  Further, the state circuit court's denial of the claims as facially insufficient, because his allegations of prejudice were conclusory, constituted an adjudication on the merits.  In disposing of the claims, the state court considered the sufficiency of the claims, focusing on the factors for determining whether the claim was sufficient to warrant relief under Strickland (*see* Ex. J at 134–41).  There is no indication the court applied a state procedural rule in disposing of the claims.  The undersigned concludes the state court's disposition was an adjudication on the merits, and Petitioner's claims are not procedurally barred or otherwise unexhausted.  *See* Borden v. Allen, —— F.3d ——, 2011 WL 26855730, at *18–24 (11th Cir. July 12, 2011) (rejecting district court's conclusion that petitioner's claim was procedurally barred where state court ruled that petitioner's vague assertions and unsupported conclusions were insufficient to withstand summary dismissal because they failed to contain the required specificity and full disclosure of the factual basis, and holding that state court's disposition was an adjudication on the merits; therefore, review of state court decision under deferential standard of AEDPA was appropriate).

     1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs claims of ineffective assistance of counsel.

     2.      Federal Review of State Court Decision

As previously noted, Petitioner raised these claims in Grounds 3 and 4 of his amended Rule 3.850 motion (Ex. J at 94–100).  The state circuit court adjudicated the claims as follows:

**<u>Claim III</u>**

> Defendant also argues that his counsel provided ineffective assistance of counsel in failing to "investigate, present any evidence, or prepare for, depose, subpoena, or present key defense witnesses at trial."  Defendant claims that he informed his counsel that during the time frame in which the offenses were to have

taken place, there were some "extremely relevant and sexually explicit occurrences" which occurred at the child victim's grandmother's house. Specifically, Defendant contends that the child's grandmother had a live-in male friend who was found masturbating, while holding a pair of female's soiled panties to his face, assumed to have been taken from the laundry. Defendant asserts that the child victim was left at her grandmother's residence several times a week, and evidence of this incident would have supported Defendant's defense that someone else committed the crime.

After carefully reviewing Defendant's first amended motion, this Court found Defendant's claim to be facially insufficient. This claim was stricken and Defendant was given a reasonable opportunity to amend this insufficient claim.[FN 11: reference to Order Striking Insufficient Claim for Postconviction Relief and Granting Leave to Amend] Even after being granted leave to amend, Defendant failed to file a proper amendment to this claim. Consequently, as Defendant has failed to properly amend this insufficient claim, this Court chooses to decide the entirety of Defendant's motion on its merits, and to deny with prejudice claim three of Defendant's motion as being facially insufficient. See Nelson v. State, 977 So. 2d 710 (Fla. 1st DCA 2008); Oquendo v. State, 2 So. 3d 1001 (Fla. 4th DCA 200[8]); and Lawrence v. State, 987 So. 2d 1257 (Fla. 2d DCA 2008). An explanation of this Court's findings regarding facial insufficiency follows:

### a. Janifer Carter's Mother's Friend ("New Man" Suspect)

Defendant claims his counsel should have investigated "Janifer Carter's Mother's Friend." Defendant's allegation regarding "Janifer Carter's Mother's Friend ("New Man" Suspect)" is facially insufficient. Initially, identifying the person as "Janifer Carter's Mother's Friend" is not an adequate identification of the purported witness. See Austin v. State, 762 So. 2d 558, 558 (Fla. 4th DCA 2000). Additionally, Defendant claims that the substance of this person's testimony would have been "would have assisted in provided [sic] jury with an alternative suspect." Defendant fails to allege the actual substance of the person's proposed testimony. Even though Defendant does not know the person's name and Defendant also alludes to the man in question being transient, Defendant makes the conclusory allegation that "Janifer Carter's Mother's Friend" would have been available to testify, and claims that this "[w]itness was exculpatory and material to his defense." While the alleged actions of this person may be unsavory, sniffing a grown woman's[FN 12: Defendant does not state the age of Janifer Carter's younger sister, the purported owner of the panties in question. This Court assumes that Ms. Carter's younger sister is an adult. If Ms. Carter's younger sister is a minor, Defendant has failed to allege such fact in his motion (yet another example of the facial insufficiency of Defendant's claim)] panties while masturbating is in no way related to the sexual

battery of a child.  Consequently, this evidence would not be considered exculpatory or material to Defendant's defense.

### b.  Janifer Carter's Aunt

Defendant claims that Janifer Carter's [a]unt, who lived at the child's grandmother's home, witnessed the grandmother's friend with a pair of Janifer Carter's younger sister's panties put to his face, while he was masturbating.  Again, this portion of Defendant's claim is facially insufficient.  Defendant is unable to properly identify this purported witness by name.  See Austin v. State, 762 So. 2d 558, 558 (Fla. 4th DCA 2000).  Defendant also claims that he was prejudiced by this witness not being investigated because she was "exculpatory and material to his defense."  Defendant's allegation of prejudice is conclusory and does not demonstrate prejudice in the instant case.

### c.  Janifer Carter's Younger Sister

Defendant claims that Janifer Carter's younger sister, who lived at the child victim's grandmother's home would testify that she had noticed her panties missing out of the laundry.  Defendant claims that this witness's testimony would have been exculpatory and material to his defense.  Defendant's claim is facially insufficient in that he fails to adequately identify the proposed witness.  See Austin v. State, 762 So. 2d 558, 558 (Fla. 4th DCA 2000).  Additionally, Defendant's allegation that this witness's testimony would be "exculpatory and material to his defense" is conclusory; the fact that this purported witness's panties were missing from the laundry would do little to further Defendant's defense.

### Claim IV

Defendant next claims that his counsel was ineffective for failing to investigate, depose, subpoena, or present witnesses supporting "a second key suspect."

### 1.  Freddy Barnes

Defendant alleges that he informed his counsel that he should investigate Freddy Barnes, the victim's mother's current husband, as another possible suspect for the jury to consider in this case.  Defendant asserts that Freddy Barnes could have been the real abuser, and this fact is supported by the victim identifying "Earl" as her "momma's husband," and also stating that she first told her mother about the incident "[i]n the morning when I woke up and I saw Earl in bed . . ."[FN 13:  reference to

excerpt from trial transcript]   Both of these statements were by the child victim during the course of her taped interview played at trial for the jury.

Defendant raised this same argument (couched in terms other than ineffective assistance of counsel) on direct appeal.  See Fowler v. State. 987 So. 2d 111 (Fla. 1st DCA 2008).  Ordinarily, claims raised on direct appeal are procedurally barred from consideration in Rule 3.850 motions.  See Harvey v. Dugger, 656 So. 2d 1253, 1256 (Fla. 1985).  However, because Defendant did not raise this exact argument on direct appeal, the Court will consider Defendant's claim on the merits.  See Plott v. State, 846 So. 2d 610, 612 (Fla. 2d DCA 2003).

In the instant case, the child victim testified at trial that Freddy Barnes had never done anything bad to her like Earl did.[FN 14:  reference to excerpt from trial transcript]  Freddy Barnes testified at trial that he had never sexually abused the child victim in any way.[FN 15:  reference to excerpt from trial transcript]  Additionally, when Defendant testified at trial and was asked by his counsel if there were any other adult males that had access to the child victim, Defendant implicated Janifer Carter's brother and also mentioned the child victim's grandmother's friend, but did not name Freddy Barnes as a person who would have had access to the child.[FN 16:  reference to excerpt from trial transcript]  Defendant fails to allege what other evidence could have been procured by counsel which would have shown that Freddy Barnes, and not Defendant, abused the child.  Defendant is therefore unable to demonstrate that his counsel acted deficiently or that Defendant was prejudiced in counsel's failure to further investigate Freddy Barnes as a possible suspect.

## 2.  Child Victim's Mother['s] Plot of Revenge

Defendant also claims that he asked his counsel to pursue the defense that the child's mother planted the allegations of abuse into the child's mind "in an act of revenge against Defendant for being caught in her adulterous affair and for the Defendant leaving her homeless as a result."  Defendant claims that he informed his counsel that Mickey Hughes, Rita Jordan, and Janet Holley would offer testimony to support this defense, but that his counsel failed to investigate further.

After carefully reviewing Defendant's first amended motion, this Court found Defendant's claim to be facially insufficient.  This claim was stricken and Defendant was given a reasonable opportunity to amend this insufficient claim.[FN 17: reference to Order Striking Insufficient Claim for Postconviction Relief and Granting Leave to Amend]  Even after being granted leave to amend, Defendant failed to file a proper amendment to this claim.  Consequently, this Court chooses to deny with prejudice the portions of Defendant's claim four that are facially insufficient.  See Nelson v. State, 977 So. 2d 710 (Fla. 1st DCA 2008); Oquendo v. State, 2 So. 3d

1001 (Fla. 4th DCA 200[8]); and <u>Lawrence v. State</u>, 987 So. 2d 1257 (Fla. 2d DCA 2008). An explanation of this Court's findings follows:

### a. Mickey Hughes

Defendant alleges that Mickey Hughes, who is Defendant's former employer, would have testified that he witnessed Defendant threaten Janifer Carter with burning all of her mail, including her child support checks from the State, if Janifer Carter did not change her mailing address from Defendant's. Defendant also appears to allege that Janifer Carter arrived at Defendant's place of employment to retrieve her mail from Defendant and she informed Defendant that Freddy Barnes was outside waiting on [sic] her. Defendant claims that he informed Janifer Carter previously not to bring Mr. Barnes to Defendant's work. Defendant allegedly went outside where a "heated exchange" took place that almost resulted in a physical confrontation. Defendant claims that Mickey Hughes was an exculpatory and material witness to the defense, and that the result of Defendant's trial would have been different if Mr. Hughes had been called by counsel to testify.

The second portion of Defendant's claim regarding Mickey Hughes is facially insufficient. While Defendant alleges that the heated exchange occurred at his work, Defendant fails to specifically allege that Mr. Hughes witnessed this event, and who the heated exchange was between (i.e., Defendant and Janifer Carter; Defendant and Freddy Barnes; Janifer Carter and Freddy Barnes; or Defendant, Janifer Carter, and Freddy Barnes). Additionally, Defendant's conclusory allegation of prejudice that Mickey Hughes was an "exculpatory and material witness to the defense" is facially insufficient. <u>See</u> <u>Suggs v. State</u>, 923 So. 2d 419, 438 (Fla. 2005). Consequently, this portion of Defendant's claim regarding the testimony of Mr. Hughes continues to be facially insufficient and is denied with prejudice.[FN 18: The Court notes that during the November 28, 2006 hearing, it was represented to the Court that a proposed Defendant's witness who was to purportedly testify regarding Janifer Carter coming to Defendant's work and threatening to make false charges against Defendant had spoken with the prosecutor and disclaimed knowledge regarding said topic. The name of the proposed witness was not revealed at the hearing. <u>See</u> Attachment 2, Transcript, Hearing, November 2006, pp. 22–23.]

The remainder of Defendant's claim regarding Mr. Hughes['s] purported testimony is refuted by the record. The issue of Defendant delivering Janifer Carter's mail was raised at trial. On cross-examination, the follow exchange occurred between the prosecutor and Defendant:

Q [by Mr. Kaden, Prosecutor]  And you agree that you took those child support checks down to where you were working at the time which was not Salters, was it?

A [by Defendant]  That was Mickey Hughes.

Q  You were working there, not Salters?

A  Mickey Hughes.

Q  I thought you just told the jury that you were working at Salters the entire time you were living there?

A  After she left I went to Salters—or I working [sic] at Salters then I went to Mickey Hughes after she left.

Q  And you gave [Janifer Carter] those child support checks without any problem?

A  I did give them to her.

Q  She didn't have any reason to be mad at you for withholding her child support?

A  Other than I told her to change her address from where I lived to where she moved in with Freddy Barnes.

Q  Do you think she got [the victim] to make up these charges on you because you wouldn't give her child support checks?

A  I don't know what has happened.  I don't know what happened.

Q  Let me ask the questions please, sir, and then you can answer.  Are you saying that that would be a reason for her to get [the victim] to make these charges up against you?

A   I wouldn't think it would be a good enough reason.   I wouldn't.[FN 19:  reference to excerpt from trial transcript]

By Defendant's own admission at trial, Defendant indicated that he did not believe Janifer Carter would have had good reason to make up charges against him. Defendant cannot demonstrate that his counsel was deficient in failing to elicit

testimony from Mickey Hughes, which would have been contrary to Defendant's testimony at trial.  Defendant is not entitled to relief as to this claim.

### b.  Rita Jordan and c.  Janet Holley

Defendant next claims that Rita Jordan and Janet Holley, both friends of Janifer Carter, would have provided testimony that Janifer Carter had a history of making false allegations of sexual abuse in order to "exact revenge."  Specifically, Janifer Carter had made false allegations of being sexually abused by her own father, in order to exact revenge against him.  Defendant claims that the testimony of both Rita Jordan and Janet Holley in this regard would have been exculpatory and material to his defense, and the result of his trial would have been different if his counsel had offered such testimony.  Additionally, such proposed evidence would not have been admissible at trial; therefore Defendant is unable to demonstrate prejudice.  See Pantoja v. State, 990 So. 2d 626 (Fla. 1st DCA 2008).

(Ex. J at 134–41).  Petitioner briefed these issues on appeal to the First DCA (Ex. K at 23–30).  The First DCA affirmed without written opinion (Ex. M).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler v. United States, 218 F.3d 1305, at 1314 n.14 (11th Cir. 2000) (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  If the record is not complete regarding counsel's actions, then the courts should presume "that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some reasonable lawyer might do." Id. at 1314–15 n.15.  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."  Waters, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

The state court reasonably applied Strickland in denying Petitioner's claim that counsel was ineffective for failing to investigate and pursue a "Janifer Carter revenge plot" defense.  Initially, this federal court must defer to the state court's determination that the testimony of Rita Jordan and Janet Holley proposed by Petitioner (that is, that Janifer Carter had a history of making false allegations of sexual abuse against her father to exact revenge on him) would have been inadmissible under state

law.  In light of this determination, Petitioner cannot demonstrate deficient performance by counsel or prejudice resulting from counsel's failure to present this testimony.  Additionally, Petitioner's assertions as to proposed testimony by Mickey Hughes are purely speculative.  He has proffered no reliable evidence, for example, an affidavit from Mr. Hughes, of the substance of Mr. Hughes's testimony had he been called as a witness at trial.  Therefore, he failed to make a sufficient showing of deficient performance or prejudice with regard to counsel's failure to investigate Mr. Hughes as a witness or present his testimony at trial.

The state court also reasonably applied Strickland in denying Petitioner's claim that counsel was ineffective for failing to investigate and pursue a "Freddy Barnes could have done it" defense. As the state court found, the jury heard the victim's videotaped statements identifying "Earl" as her "momma's husband," and also stating that she first told her mother about the incident "[i]n the morning when I woke up and I saw Earl in bed . . ." (Ex. C at 111, 113).  The jury also heard the victim's testimony that Freddy Barnes had never done anything bad to her like Earl did (*id.* at 45). Freddy Barnes testified at trial that he had never sexually abused the child victim in any way (*id.* at 87).  Further, when Petitioner was asked by defense counsel if there were any other adult males that had access to the child victim, Petitioner implicated Janifer Carter's brother and the victim's grandmother's friend, but did not implicate Freddy Barnes as a person who would have had access to the child (*id.* at 152–54).  Petitioner does not identify any evidence, not already presented to the jury, that could have implicated Freddy Barnes as the abuser.  Therefore, he failed to satisfy the Strickland standard with regard to counsel's failure to investigate and pursue a "Freddy Barnes could have done it" defense.

Finally, Petitioner failed to demonstrate the state court unreasonably applied Strickland in denying his claim that counsel was ineffective for failing to investigate and pursue a "Grandmother's male friend could have done it" defense.  Petitioner's assertions as to proposed testimony by Janifer Carter's grandmother, aunt, and younger sister are purely speculative.  Further, even if they would have testified as Petitioner proposes, their testimony that the male friend had access to the victim and was discovered masturbating while smelling a pair of women's panties was not probative of the issue of whether Petitioner sexually molested the victim in the manner she described.  Therefore, he failed

to show deficient performance or prejudice with regard to counsel's failure to investigate and pursue this defense.

Petitioner failed to demonstrate that the state court's adjudication of the claims raised in Grounds Four and Five of his federal petition was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to relief on Ground Four or Five.

>   E.   <u>Ground Six:  "Defense counsel was ineffective for failing to object when the trial judge departed from his role of impartial arbiter by threatening a vindictive sentence during plea negotiations.  Defense counsel's failure violated the Petitioner's due process rights under the 5th, 13th and 14th Amendment[s] (U.S. Constitution), and the Defendant's 6th Amendment right (U.S. Constitution) to effective counsel."</u>

Petitioner asserts the day before trial, the trial judge initiated plea negotiations with him, defense counsel, and the prosecutor in chambers (doc. 1 at 21–22).  He asserts the prosecutor offered him a 15-year plea deal, which he refused (*id.*).  Petitioner asserts the prosecutor then informed the judge that Petitioner had made a phone call to someone, which had been recorded, during which Petitioner attempted to persuade the person to testify falsely about the facts of the case (*id.*).  Petitioner states the judge then told him that if he exercised his right to go trial, he (the judge) would impose the maximum sentence provided by law (*id.*).  Petitioner went to trial and was convicted, and the judge sentenced him to life imprisonment (*id.*).  Petitioner contends defense counsel's failure to object to the prosecutor's allegation and failure to object to the judge's threat of a vindictive sentence constituted ineffective assistance of counsel (*id.*).

Respondent concedes Petitioner exhausted this claim of ineffective assistance of counsel in state court (doc. 24 at 13, 42).  Respondent contends Petitioner failed to establish that the state courts' adjudication of his claim involved an unreasonable determination of the facts or was contrary to or an unreasonable application of <u>Strickland</u> (*id.* at 42–45).

>   1.   Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

>   2.   Federal Review of State Court Decision

Petitioner raised this claim in his amended Rule 3.850 motion (Ex. J at 103).  The state circuit court adjudicated the claims as follows:

Defendant's claim is refuted by the record. On November 28, 2006, just two days before Defendant's trial, the Court convened a hearing regarding the child victim's child protection interview.[FN 24:  reference to hearing transcript]  During the course of this hearing, the State announced that it had made a plea offer to the Defendant that day.[FN 25:  reference to excerpt from hearing transcript]  After reviewing the child victim's recorded interview, Defendant's counsel represented the following to the Court:

> MR. DUNKERLEY (Defense Counsel):  Your Honor, after reviewing the video of the CPT interview with [G.J.], I've discussed with Mr. Fowler the recent developments in the case[,] [t]he defense witnesses, and the State's offer of 12 years state prison followed by five years probation with the understanding that, if we go to trial and lose, he's looking at a mandatory life prison sentence.

> Mr. Fowler has declined to take the State's offer at this time and is proceeding to trial.[FN 26:  reference to excerpt from hearing transcript]

Following this representation by counsel, the Court engaged Defendant in an extensive inquiry to determine whether Defendant was knowingly rejecting the plea:

> THE COURT:  Mr. Fowler, I want to talk to you a little bit about what Mr. Dunkerley just indicated just to make sure that this is a knowing, and free, and voluntary decision that you are making.

> You understand, as I understand, Mr. Dunkerley has engaged in a full disclosure of all the [d]iscovery with you, and he's talked about what he anticipates the State's case would show, and what he anticipates is the potential for the Defense case should he and you elect to present anything.  And you understand that?

> THE DEFENDANT:  Yes, sir.

> THE COURT:  And you are satisfied in all respects with the representation that you've received from Mr. Dunkerley?

> THE DEFENDANT:  Yes.

> THE COURT:  All right.  Now, he indicates to me there has been an oral discussion between himself and Mr. Kaden where Mr. Kaden made an additional effort to resolve this by negotiated plea

where a discussion of 12 years state prison followed by five years probation—[a]nd is that as a sex offender, Mr. Dunkerley?

      **MR. DUNKERLEY**:  I don't think that we discussed that detail.  I assume it would be as a sex offender.

      **MR. KADEN** (Prosecutor): At least a sex offender, probably a sexual predator.

      **THE COURT**:  So those details were not resolved.

      **MR. KADEN**:  No.  For either of the crimes.  What I would do would be to allow him to plead to one, and, you know, we could probably pick which one.  I don't know.  But both of them would qualify as a sexual predator, I believe.

      **THE COURT**:  All right.  But nonetheless, the discussion in terms of the state prison sentence and the period of probation, that was a firm discussion.  In terms of whether it was as a sex offender or a sex predator, they really didn't resolve those issues in the discussion because as I understand it you are rejecting the plea discussion outright on the issue of terms of years.

      **THE DEFENDANT**:  Yes, sir.

      **THE COURT**:  Whether it's as a sex offender or predator, that's no[t] the relevant issue here.

      **THE DEFENDANT**:  No sir, it's not.

      **THE COURT**:  What is relevant to you is that you're not wanting to do—

      **THE DEFENDANT**:  I didn't do that.  Did not do this.

      **THE COURT**:  [R]ight.  And you're not willing to do 12 years state prison followed by five years probation?

      **THE DEFENDANT**:  No.  And if God wants me to go to prison, there's a reason for it.  And if that's where he wants me, that's where I'll be.

**MR. DUNKERLEY**:  Okay.

**THE COURT**:  But I want to make sure that you understand that the offer, if it is not taken out [sic]—I want to assure both counsel and you that there will be no more plea discussions—

**THE DEFENDANT**:  Yes.

**THE COURT**: —in this case as far as the Court's concerned. Anything after today would be a straight-up plea to the Court.

**THE DEFENDANT**:  Yes.

**THE COURT**:  Do you need more time to think about it, talk to your attorney about it?

**THE DEFENDANT**:  No, sir.

**THE COURT**:  You're satisfied that you've had a full, fair, and free opportunity to think about this issue.

**THE DEFENDANT**:  Yes, sir.

**THE COURT**:  You've had a full, fair, and free opportunity to discuss it with your attorney?

**THE DEFENDANT**:  Yes.

**THE COURT**:  You're completely and totally satisfied with all the discussions you've had with him and the level of representation you've received.

**THE DEFENDANT**:  Yes.

**THE COURT**:  And the decision you are making now is a knowing decision?

**THE DEFENDANT**:  Yes, sir.

**THE COURT**:  So he has rejected the plea offer.

   And for both counsel this Court would not entertain a plea agreement from this point forward.  And so from this point forward it is a straight-up plea or go to trial.[FN 27:  reference to excerpt from hearing transcript]

   After the afore-mentioned inquiry, the prosecutor informed the Court that some evidence Defendant had been depending upon may not surface.  Specifically, the prosecutor told the Court that he understood Defendant believed one of his witnesses was going to testify that the child victim's mother (Janifer Carter) had come to Defendant's place of employment and had made threats of making false charges against Defendant.  The prosecutor spoke with the proposed witness, and the witness stated that he did not know what the prosecutor was talking about, or why he had been listed as a witness.  The prosecutor informed the Court and Defendant of this information so that Defendant would know that the evidence he may have been depending upon was most likely not going to surface.[FN 28:  reference to excerpt from hearing transcript]   The prosecutor also informed the Court that one of Defendant's witnesses had previously indicated to Defendant she would be testifying that the child victim's mother (Janifer Carter) believed that the child victim may have been sexually molested by the child's maternal grandfather, and the child had been taken to Avalon for that purpose.  The State represented that the mother of the child disagreed with the proposed testimony and that the State expected to have records from Avalon disputing the substance of the proposed testimony before trial.[FN 29:  reference to excerpt from hearing transcript]  Contrary to Defendant's allegation, no representations were made to the Court that Defendant had tried to get the Defendant's proposed witnesses to lie on his behalf.  The record also fails to support Defendant's allegation that the Court was "inflamed" against Defendant.  After this information was presented by the State, the Court inquired of Defendant further to confirm that Defendant was aware of the State's information regarding the proposed testimony of Defendant's witnesses at the time he decided to reject the plea.[FN 30:  reference to excerpt from hearing transcript]

   Contrary to Defendant's allegations, the record shows that Defendant was not offered fifteen (15) years of incarceration, but instead was offered a plea of twelve (12) years of incarceration followed by five (5) years of probation.  The record also clearly demonstrates that at no time did the Court initiate plea negotiations with Defendant, nor did the Court threaten Defendant with a vindictive sentence.  Defendant was merely informed by counsel in open court that if he did not accept the plea agreement, he would be sentenced to a mandatory life prison sentence.  The Court did not act vindictively in imposing the mandatory sentence required by law.  The record before the Court fails to support Defendant's contention that the Court was vindictive in sentencing him to life.  See Freeman v. State, 818 So. 2d 580, 584 (Fla. 5th DCA 2002) (sentence not vindictive when court imposed minimum

mandatory life sentence after defendant rejected plea offer).   Consequently,
Defendant has failed to demonstrate that the sentence imposed was vindictive or that
his counsel was deficient for failing to object to Defendant's sentence.  Defendant is
not entitled to relief on this claim.

(Ex. J at 143–48).  Petitioner briefed this issue on appeal, arguing that the lower court failed to

include a complete transcript of the pre-trial hearing, and omitted the portion of the transcript that

supported his argument (Ex. K at 19–23).  The First DCA affirmed without written opinion (Ex. M).

Initially, Petitioner was mistaken regarding the completeness of the transcript attached to the

circuit court's order.  The record demonstrates that the court attached a complete transcript to the

order as Attachment 2 (Ex. J at 159–91).  The transcript supports the state court's finding that the

prosecutor did not represent to the court that Petitioner had attempted to persuade a defense witness

to testify falsely on his behalf.

Additionally, Petitioner failed to show defense counsel had a reasonable basis, under state

or federal law, for objecting to the sentence as vindictive.  In Wilson v. State, 845 So. 2d 142, 156

(Fla. 2003), the Florida Supreme Court set forth the applicable standard when determining whether

the defendant's due process rights were violated by "the imposition of an increased sentence after

unsuccessful plea discussions in which the trial judge participated." (emphasis added).  As further

explained in Wilson:

> Judicial participation in plea negotiations followed by a harsher sentence is one of the
> circumstances that, along with other factors, should be considered in determining
> whether there is a "reasonable likelihood" that the harsher sentence was imposed in
> retaliation for the defendant not pleading guilty and instead exercising his or her right
> to proceed to trial.  The other factors that should be considered include but are not
> limited to:  (1) whether the trial judge initiated the plea discussions with the
> defendant . . . ; (2) whether the trial judge, through his or her comments on the
> record, appears to have departed from his or her role as an impartial arbiter by either
> urging the defendant to accept a plea, or by implying or stating that the sentence
> imposed would hinge on future procedural choices, such as exercising the right to
> trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and
> (4) the lack of any facts on the record that explain the reason for the increased
> sentence other than that the defendant exercised his or her right to a trial or hearing.

Id. at 156 (citation omitted; footnotes omitted).  If the totality of the circumstances gives rise to a

presumption of vindictiveness, then the burden shifts to the State to produce evidence on the record

to dispel the presumption.  *Id.* at 156 n.8 ("Where the totality of the circumstances does not give rise to a presumption of vindictiveness, the burden remains upon the defendant to prove actual vindictiveness.").

In the instant case, the record does not suggest that the trial judge participated in the plea negotiations.  Florida law does not forbid a judge from becoming involved in a discussion wherein the accused is asked whether he is aware of the State's pending plea offer and the defendant's maximum exposure if convicted at trial.  *See* Snow v. Crosby, 851 So. 2d 222, 225 (Fla. 3d DCA 2003) (citations omitted).  Further, assuming arguendo that the judge's exchange with Petitioner regarding the knowing and voluntary nature of his rejection of the plea offer constituted participation in the plea negotiations, the record demonstrates that the totality of the circumstances did not give rise to a presumption of vindictiveness.  The trial judge did not initiate the plea discussion, never implied that a harsher sentence would result if Petitioner exercised his right to a trial by jury, did not tell him to accept or reject the plea offer, did not force him to take time to consider his options, and only attempted to ensure that Petitioner's rejection of the offer was voluntary, knowing, and intelligent, and that Petitioner was aware that the court would not thereafter entertain a plea agreement unless it was "straight-up," with no negotiated sentence in place.  Moreover, although there was a great disparity between the plea offer (12 years of imprisonment followed by 5 years of probation) and the ultimate sentence imposed (life imprisonment), the record shows that the reason for the increased sentence was the fact that the trial court was statutorily required to impose it.  *See* Fla. Stat. § 794.011(2)(a) ("A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and 921.141."); Fla. Stat. § 775.082(1) ("A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole); Fla. Stat. § 921.141(1) (upon conviction or adjudication of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or

life imprisonment).  Finally, Petitioner made no showing of actual vindictiveness on the part of the sentencing judge.  Therefore, as the state court determined, defense counsel had no basis to object to the sentence as vindictive.  *See* Jamerson v. State, 888 So. 2d 49, 50 (Fla. 5th DCA 2004); Hornbuckle v. State, 864 So. 2d 1203, 1205 (Fla. 5th DCA 2004); Vondervor v. State, 847 So. 2d 610, 614 (Fla. 5th DCA 2003); Snow, *supra*; Bell v. State, 847 So. 2d 558, 564 (Fla. 3d DCA 2003); Graff v. State, 843 So. 2d 1012, 1015 (Fla. 5th DCA 2003).  Petitioner thus failed to show that counsel performed deficiently, or that he was prejudiced by counsel's failure to object to his sentence.  *See* Smith v. Florida, 269 F. App'x 871, 874 (11th Cir. 2008) (unpublished) (denying claim of ineffective assistance of counsel based upon the sentencing court's imposition of an allegedly vindictive sentence of life imprisonment after petitioner rejected plea offer and proceeded to trial; once petitioner was convicted of first-degree murder, trial court was statutorily required to impose a sentence of life imprisonment, under Fla. Stat. §§ 775.082(1), 782.04(1)(a), and thus there "was no room for vindictiveness").  Accordingly, the state court's adjudication of Petitioner's claim was not unreasonable under Strickland.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28th day of September 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**